Randolph Daniel KEIPER, Appellant,

v.

Hoyt C. CUPP, Superintendent, Oregon State Penitentiary, Appellee.

No. 74–1900.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1975.

Frederick E. John, San Francisco, Cal., for appellant.

W. Michael Gillette, App. Div., Salem, Or., for appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and SWEIGERT, District Judge.*

## OPINION

KILKENNY, Circuit Judge:

Keiper, an inmate of the Oregon State Penitentiary, appeals the dismissal of his habeas corpus petition. The voluminous state court record culminating in appellant's conviction by a jury, and its affirmance on direct state appeal, was considered by the district court and is now before us for review. We affirm.

### FACTS

On November 27, 1970, appellant, based on an accusation by his friend Moody, was arrested in Portland on a charge of murdering his fiancee by drowning. He was then read the *Miranda*[1] warnings, which were repeated to him after he was taken to the police station, where he was questioned to no avail. While at the station, he telephoned his stepmother and asked her to contact a specified attorney. He was thereafter questioned on three occasions prior to his scheduled arraignment on November 30th. Although on two of these occasions he was readvised of his rights, he did not request an attorney. When he appeared for his arraignment on November 30th, he indicated to the judge that he was attempting to retain private counsel, and the judge continued the arraignment for that purpose until December 2nd. The judge fully explained to appellant his right to remain silent. Following his appearance before the judge, appellant was interviewed by Officer Gilfillan. On this occasion, he was not readvised of his rights. Significantly, appellant had until this time consistently stated that he knew nothing about his fiancee's death. After being told for the first time that Moody was talking, appellant indicated he wanted to tell exactly what had happened. He then admitted that he had been present when his financee was drowned, but said that Moody was responsible for her death. Appellant terminated the conversation when the officer doubted his veracity. He then said he wanted to talk to Officer Ogden.

When Ogden arrived, appellant again claimed he had been present when his fiancee was drowned, but insisted that Moody was to blame. Ogden suggested that appellant could prove his innocence by undergoing a polygraph examination. At this point, appellant indicated he would like to see a lawyer because he did not know much about polygraphs and wanted to hear what an attorney might say about it. However, he did not specifically ask the officer to contact a lawyer.

The following day, Ogden returned and told appellant he wanted the truth. This time appellant was not readvised of his rights. He said he wanted to tell the truth, desired to prove it, and agreed to take a polygraph examination. He made no mention of an attorney. Appellant, Ogden and another officer left the jail in Portland shortly after 8:00 P.M. and ar-

---

* The Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

rived some three hours later in Curry County, where the test was to be conducted. There, appellant was readvised of his *Miranda* rights and told that he was not compelled to take the examination. He was then read a special form known as a "Voluntary Polygraph Examination & Waiver of Rights." The appellant appeared to be physically sound and mentally alert at the time he signed the Waiver.

During the polygraph test, appellant insisted that he was present at the scene of the crime, but was knocked out and did not see the murder. When informed that the test showed "gross deceptive patterns," he started crying and became "very emotional." Appellant then agreed to give a true statement, and an officer went for a tape recorder. The taping of appellant's statement commenced at 2:00 A.M. and continued for approximately 24 minutes. On one occasion during the taping process, one of the officers reminded appellant that he had previously been advised of his rights. Appellant again broke down, but indicated that he wanted to go on. He admitted in this statement that Moody had neither knocked him down nor out, but that he had just stood there and watched Moody drown his fiancee.

The state trial court, after conducting a hearing,[2] found beyond a reasonable doubt that all the statements made by appellant before, during and after the taking of the polygraph test were entirely voluntary, as was the administration of the polygraph test itself. Additionally, the court found that there was no violation of the rights created under *Miranda* regarding any of the statements or in connection with the taking of the polygraph test. However, it ruled that it would not allow either the fact of the taking or the results of the polygraph test to be introduced as evidence in the trial. Neither party offered to introduce such evidence.

In the trial, appellant was found guilty of second degree murder. The Oregon State Court of Appeals upheld the conviction. State v. Keiper, 8 Or. App. 354, 493 P.2d 750 (1972), and the Oregon Supreme Court denied review.

After the filing of the habeas petition and the response of the respondent, which included the full state court record, the United States Magistrate for the District of Oregon, to whom the subject was submitted for recommendation concluded, on the basis of the exhaustive hearing which petitioner received in the state court, that the statements were voluntary, that appellant had not exhausted his state court remedy with reference to a challenged instruction, and that post-conviction relief was still available to him on the instruction point in the state courts.[3]

The district judge's approval of the Magistrate's recommendations and denial of the petition reads as follows:

> "*After reviewing the file and record in* this case, I approve the above recommendations. [Emphasis supplied.]
>
> IT IS ORDERED that the petition is denied."

## LACK OF EVIDENTIARY HEARING

Appellant insists that the district court should have held an evidentiary hearing on his habeas petition. It is well settled that a federal court need not hold an evidentiary hearing in a habeas proceeding if the state court record shows that the petitioner received a full and fair evidentiary hearing in the state court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). For that matter, the state court record is presumed to be correct unless the petitioner establishes, or it shall otherwise appear:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

2. Under the rule of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. Oregon Revised Statutes 138.510–138.680.

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding. 28 U.S.C. § 2254(d).[4]

■ Our review of the entire state record convinces us that appellant failed to carry his burden on any one or more of these requirements. For that matter, appellant makes no claim that he did not receive a full, fair and adequate hearing in the state court proceeding. Seemingly, he argues that the state court judge reached the wrong conclusion after hearing the evidence on the voluntariness of his statements. The procedure for considering this claimed error is not to require the federal district court to hold an evidentiary hearing, but rather to review the voluntariness issue by examining the state trial record. Anderson v. Nelson, 432 F.2d 55 (CA9 1970).

■ Specifically, appellant challenges the voluntariness of his post-polygraph statement. The record is clear that he was read his *Miranda* rights prior to the polygraph test. The record also shows that appellant was advised repeatedly of these rights and told that he could cease the interviews at any time. The fact that the polygraph test was conducted in the early morning hours and that appellant was crying and emotionally upset at the time of the interview, does not in itself allow us to set aside the findings of the state trial judge. He conducted an exhaustive hearing under Jackson v. Denno guidelines, and held beyond a reasonable doubt[5] that all of the statements made before, during and after the polygraph test were entirely voluntary. Where there is sufficient evidence, as here, to support the findings of the state trial judge, we must uphold those findings. Clark v. Nelson, 442 F.2d 413, 414 (CA9 1971).

■ While it would have been wrong for the officers to press appellant to take a polygraph test immediately after he had expressed a desire to consult counsel, United States v. Jeffery, 473 F.2d 268 (CA9 1973), cert. denied, 414 U.S. 818, 94 S.Ct. 42, 38 L.Ed.2d 51, it was not improper for the officer, after termination of the interview, to return the following evening and inquire if appellant had changed his mind. United States v. Jackson, 436 F.2d 39 (CA9 1970), cert. denied, 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971).

■ We find no authority to support appellant's contention that he should have been given another *Miranda* warning after being told of the "gross deceptive patterns" revealed in his polygraph test. He does not dispute the fact that he was read his rights before the test began and signed a written waiver of rights form. However, he argues that the waiver applied only to the test, that the waiver of his rights terminated when the test ended, and that before questioning him about discrepancies in his story, he again should have been advised of his rights. Because appellant had been advised many times of his rights prior to, and at the time of the polygraph test, there is no reason to believe that he was not fully aware of those rights during the crucial period when his final story was taped. Maguire v. United States, 396 F.2d 327, 331 (CA9 1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969), and United States v. Manar, 454 F.2d 342, 344 (CA7 1971), are

4. The presumption does not apply to § 2254(d)(8).

5. A preponderance of the evidence is sufficient. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

informative on this subject. The state court record, which we have carefully analyzed, fully supports the finding that the post-polygraph statement was made voluntarily. In our review of the record, we have been governed by the guidelines stated in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and have looked at the totality of the surrounding circumstances, including the characteristics of the accused and the complete details of his detention and interrogation. It is our duty to uphold the trial court's determination on voluntariness when there is substantial proof in the entire record to support his findings and conclusions. United States v. Zamora-Yescas, 460 F.2d 1272 (CA9 1972), cert. denied, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136. Here, the proof is adequate.

## THE WINGO PROBLEM [6]

■ Additionally, appellant contends that the district court failed to examine the state court record as required by Anderson v. Nelson, *supra*. The material before us shows that the state court record was examined initially by the United States Magistrate for the District of Oregon and that he made a report to the district judge recommending a denial of appellant's petition. If the Magistrate had conducted an evidentiary hearing and then made a recommendation which was approved by the district judge after reviewing the record, the appellee would be faced with McCusker v. Cupp, 506 F.2d 459 (CA9 1974). *McCusker holds*: (1) that a United States Magistrate has no jurisdiction to hold evidentiary hearings in habeas proceedings, and (2) that such hearings must be held by a district judge. For the record, *Wingo*, upon which *McCusker* is based, was decided subsequent to the denial of this petition.

*Wingo* and *McCusker* are readily distinguished from the case before us. Each is grounded on a background of oral testimony. In each case, a Magistrate heard the testimony. In neither did the judge have the opportunity to see or observe the witnesses. Here, the Magistrate's memorandum amounts to nothing more than his analysis of the state court record and the district court pleadings, all entirely in writing. Here, as distinguished from *Wingo* and *McCusker*, the Magistrate did not receive testimony on an issue of fact. His recommendation might well be likened to a law clerk's memorandum. The district judge's order states that he reviewed the file and the record in the case before he approved the Magistrate's recommendation. There is no evidence that the judge did not, in fact, review the *file* and the *record*. The record, of course, includes the state court proceedings and transcripts. For that matter, we must assume that the district judge properly performed his functions and carefully scrutinized this material, as required by Anderson v. Nelson, *supra*.

## THE CHALLENGED INSTRUCTION

■ Appellant challenges the constitutionality of the state court's instruction in regard to the presumption of truth in a witness's testimony. The same type of challenge was rejected by the Supreme Court in Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), where the identical instruction was before the Court. Here, as in *Naughten*, the jury was also instructed on the "presumption of innocence" and that the proof of guilt must be "beyond a reasonable doubt." In the interest of judicial expediency, we have elected to dispose of this issue, even though it was not presented to the state court. *Naughten* controls here, and appellant's claim is groundless.

The judgment of the district court is affirmed.

6. Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974).