**DE MARTINO, Michael J., Appellant,**

v.

**WEIDENBURNER, Chester A., J. S. C. and John J. Degnan, the Attorney General of the State of New Jersey.**

No. 78–2624.

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1979.

Decided March 5, 1980.

---

Seymour Margulies (argued), Richard R. Uslan, Brigadier & Margulies, Jersey City, N. J., for appellant.

Peter H. Brennan (argued), Deputy Atty. Gen., Div. of Crim. Justice, App. Section, Princeton, N. J., John J. Degnan, Atty. Gen., State of New Jersey, Trenton, N. J., for appellees.

Before GIBBONS, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus. The appellant, Michael De Martino, argues that he was denied due process because of the prosecution's suppression of evidence that allegedly would have impeached a key witness. He also argues that the state and district courts' denials of his request for an evidentiary hearing on the issues of suppressed and newly discovered evidence deprived him of due process. Because we conclude that none of the evidence, either singly or in combination, can be considered material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1973), we will affirm.

### I.

The appellant, who was president of the city council of Elizabeth, New Jersey and chairman of the local Alcoholic Beverage Commission (ABC), was found guilty on March 29, 1973 of extortion, of accepting a fee as a public officer for the performance of a service in a criminal case, and of misconduct in office, in violation of N.J.Stat. Ann. tit. 2A §§ 105–1, 105–2 and 85–1.

The crux of the case against the appellant concerned the purpose of a payment from Joseph Del Nero. Del Nero, who owned and operated a tavern in Elizabeth, New Jersey, had previously been arrested for conducting gambling activities on the tavern premises. The arrest resulted in the suspension of the tavern's license. Del

Nero thereafter approached the appellant who was chairman of the local ABC, the issuing authority of liquor licenses in the city. Del Nero gave the appellant $3,000. The State claimed that this transfer was a bribe and was understood to be so by the parties. The appellant contended that the money was actually to be used to obtain a lawyer to represent Del Nero on the gambling charge.

On May 4, 1973, following his conviction, the appellant moved for a new trial alleging insufficient evidence and an improper jury charge. That motion was denied on May 11, 1973 and the trial judge, the Honorable Chester A. Weidenburner, sentenced the appellant. The convictions for extortion and for unlawful acceptance of a fee were merged to a jail term of one to two years and a fine of $1,000. A concurrent sentence and additional fine were ordered for misconduct in office.

On June 8, 1973, De Martino filed his second motion for a new trial on the grounds of newly discovered evidence and suppression of evidence by the state. This motion was denied by the trial court on June 25, 1973. De Martino appealed both denials to the Appellate Division of the New Jersey Superior Court which affirmed both denials on February 6, 1975. The appellant's petition to the New Jersey Supreme Court for certification was denied on April 24, 1975.

On May 8, 1975, De Martino filed with the trial court his third motion for a new trial and a petition for post-conviction relief on the grounds of newly discovered evidence and suppression of additional exculpatory evidence by the State. The newly discovered evidence consisted of statements by two acquaintances of Agnes Del Nero who was a witness for the State at the appellant's trial. These acquaintances claimed that Mrs. Del Nero told them, prior to the trial, that money had been given to De Martino so that he could obtain a lawyer

for her son, Joseph. The judge concluded that neither the newly discovered evidence nor the allegedly suppressed evidence was sufficiently material as a matter of law to necessitate a new trial or a reversal. He therefore denied the motion and petition on February 10, 1977. No evidentiary hearing was held. The Appellate Division of the New Jersey Superior Court affirmed the denials of the new trial motion and of the petition for post-conviction relief. De Martino's appeal and petition for certification to the New Jersey Supreme Court were denied and dismissed.

On March 22, 1978, De Martino petitioned for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the District of New Jersey. The petition was denied and this appeal followed.

II.

The appellant first claims that the State's failure to disclose certain documents, known as the Mello documents, denied him a fair trial and thereby violated his constitutional right to due process.[1] We disagree. The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1973), that non-disclosure of evidence favorable to the accused violates an accused's due process rights "where the evidence is material to guilt or to punishment . . . ." The standard of materiality varies according to the character of the prosecutorial breach of duty in the non-disclosure. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court noted three distinct classes on non-disclosures and the corresponding standards of materiality. Because the appellant here made a specific request for information, the appropriate test of materiality under *Agurs* is whether the Mello documents "might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2398.

---

1. There is some question on whether the appellant exhausted, as he must, his state remedies prior to seeking federal habeas relief. However, because we can affirm the denial of the petition on the merits, even though state reme-

dies may not have been exhausted, we need not reach the issue. *United States ex rel. Drew v. Myers*, 327 F.2d 174, 183 (3d Cir.), *cert. denied*, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52 (1964).

The Mello documents consist of a July 28, 1972 report of a prosecutor's investigator, William A. Mello, concerning a meeting Mello had with Louis C. Barbato, an employee of the Elizabeth Recreation Department, and a transcript of an August 2, 1972 telephone conversation between Mello and Barbato. In these conversations, Barbato states that the money was to be used to obtain a lawyer for Del Nero. The appellant argues that because Barbato's statements to Mello pre-date De Martino's indictment of August 30, 1972, they indicate that De Martino told Barbato an account consistent with the appellant's trial testimony before he knew of the indictment and before he had retained counsel.

■ We hold that the Mello documents were not material. First the evidence is cumulative. Two witnesses directly corroborated the substance of the appellant's testimony on the purpose of the three thousand dollars. More importantly, the appellant admitted to having received other evidence that he could have used for the same purpose as the Mello Documents.[2] "A conviction need not be vacated because evidence that is 'merely repetitious' or 'cumulative' has not been revealed to the defendant." *United States ex rel. Marzeno v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978).

Second, the evidence is of questionable value because the events occurred subsequent to the time a motive to falsify arose. That the statements were made by the appellant prior to his actual indictment is not significant. The determinative factor would be whether the statements were made prior to learning of his possible prosecution. Our review of the Mello documents, especially of the transcript of the telephone conversation, suggests that the appellant had knowledge of his possible prosecution at the time. *See* App., at 339a–349a.

2. The appellant obtained from the State a report by Mello, dated September 22, 1972, which recounts an August 23, 1972 meeting between Mello, Barbato and him during which he reportedly made statements, one week prior to his indictment, identical to these attributable to him in the allegedly suppressed items.

### III.

The appellant also argues that he should be given a new trial because of newly discovered evidence that impeaches Agnes Del Nero, a state witness. The newly discovered evidence consisted of statements from two women that Agnes Del Nero, Joseph's mother, told each of them on separate occasions that she had borrowed $3,000 in order for De Martino to hire an attorney for Joseph.

■ The existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. *Townsend v. Sain*, 372 U.S. 293, 311, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). Even assuming that such a claim was a cognizable ground for relief, the evidence here was merely cumulative to the testimony of the appellant and of two defense witnesses, Albert Coelho and Joseph Del Nero. Upon review of the record, we cannot conclude that such evidence would "probably produce an acquittal on retrial." *Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir. 1977) (where the newly discovered evidence was a recantation).

### IV.

### A.

■ The appellant argues that the alleged suppression of seven documents that first came to his attention during the perjury prosecution of Joseph Del Nero violated his right to due process.[3] The first document was a report by State Investigator Raymond Lynch summarizing an interview with Agnes Del Nero. This report, like the others to be considered hereafter, is not a verbatim statement by the witness. Rather, it provides the investigator's recollections of what the witness said.

3. The State argued below that the documents were in fact provided to the appellant prior to trial. The magistrate, however, saw no need to resolve this factual dispute because the alleged suppression of documents did "not rise to a constitutional infirmity." App., at 328a.

The materiality of this first report depends on whether it might have affected the outcome of the trial. *United States ex rel. Marzeno v. Gengler*, 574 F.2d at 736. According to this report, Agnes Del Nero stated that her daughter-in-law obtained a loan for $3,000. This was inconsistent with Agnes Del Nero's testimony that she had obtained the loan and that it was for $3,500. In our judgment, this report could demonstrate either faulty memory on Agnes Del Nero's part, faulty memory on Lynch's part, or lying on Agnes Del Nero's part. Even if the latter were true, it is difficult to understand how this evidence, setting forth an inconsistency on a wholly collateral issue, might have affected the outcome of the trial.

The second document is a report by Lynch concerning a conversation with Carmine Del Nero, Joseph's brother. The appellant alleges that this document, along with the others, impeaches Agnes Del Nero's credibility. We fail to see how this innocuous document could impeach Agnes Del Nero's testimony or how it can be considered material. The statements are both inculpatory and entirely consistent with Carmine Del Nero's trial testimony.[4]

The third document is a report by Lynch concerning statements made by Joseph Del Nero that his mother was mistaken when she spoke to Lynch about a bribe to De Martino and that none of her information was factual. The appellant argues that this document could have been used to rebut a charge of recent fabrication made by the State against Joseph Del Nero during the summation to the jury. The assertion of recent fabrication was as follows:

Now, I submit that Joe Del Nero only told the truth about the events in this case when it meant to tell a lie would make a liar out of his mother. But he told you that De Martino came to their home and said for $3,000 he will take care of everything.

I submit to you that the State's own witness, Joseph Del Nero, manufactured fabrications of fact in an effort to assist the defendant.

This contention is without merit. First, as noted by the magistrate, "the summation lacks the allegation of *recent* fabrication which is a *sine qua non* for admissibility of a prior consistent statement as rehabilitative evidence under Rule 20 [of the New Jersey Rules of Evidence]." Report and Recommendation of U. S. Magistrate, Oct. 20, 1978, at 38, *reproduced in* App., at 331a. Moreover, as evidenced from the report itself, this evidence only served to corroborate the appellant's version that the $3,000 was not a bribe. As such, the evidence is merely repetitious.

The fourth document was a report by Lynch of a conversation with Joseph Del Nero. According to this report, Del Nero told Lynch that his mother, Agnes, had been dating a state investigator, Frank Yurkiewicz, for approximately one year. The appellant argues that he was prejudiced by the suppression of this document because it demonstrates that the State knew or should have known that Agnes Del Nero committed perjury when she testified under cross examination that she knew Yurkiewicz only as a customer of her tavern.[5] Because this involves a situation in which a prosecution witness has given allegedly perjurious testimony and the prosecution knew or should have known of its

4. The entire text of the report is as follows:
On 6/27/72 at 9:15 A.M. the undersigned [Raymond Lynch] went to 546 Pennington St. Elizabeth to serve a Grand Jury subpoena on Joseph Del Nero. I spoke to Joseph's brother Carmine while there.
During my discussion with Carmine he stated that all he knew about this matter was that he himself met De Martino at the Freehold Raceway and demanded a return of the money he took from his mother. He received a call a short time later from a person whose

name he could not recall. This person instructed him to meet De Martino at the raceway again and while there De Martino passed $1000 in cash to him.
App., at 247a.

5. It is not clear that the appellant exhausted state remedies with regard to this fourth document. However, in view of our decision on the merits, we need not reach the issue. *United States ex rel. Drew v. Myers*, 327 F.2d at 183.

falsity, the first tier of *United States v. Agurs* is the proper standard for determining materiality—whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." 427 U.S. at 103, 96 S.Ct. at 2397. We conclude that the jury would not have reached a different verdict.

Agnes Del Nero's testimony was not pivotal to the State's case against the appellant. Joseph Del Nero admitted that the appellant stated that for $3,000 he would "take care of matters." Christopher Dietz, Esquire, was contacted by James Kinneally, a friend of the appellant, to represent Joseph Del Nero. Dietz testified that he never received any money from either Kinneally or the appellant for representing Del Nero. His only fee was $250 which he received directly from Joseph Del Nero. Carmine Del Nero testified to a conversation with his brother, Joseph, in which Joseph stated that he had given the appellant $3,000 "to handle things for him." Additionally, witnesses testified to secret meetings with the appellant in taverns, the race track and men's rooms where unmarked envelopes containing cash exchanged hands. This activity, reminiscent of a detective novel, probably had more of an incriminating effect than Agnes Del Nero's simple statement that De Martino "would take care of matters."

In fact, Agnes Del Nero's testimony was not highly inculpatory. She testified as follows:

Q. What did he say, what did your son say to you in the presence of Mr. De Martino in your son's apartment?

A. Mr. De Martino said to me not to worry about a thing, that he was going to take care of matters for me.

Q. What did your son say?

A. My son then told me he would need the $3000 in cash.

Q. For whom?

A. For Mr. De Martino.

Q. Now, what were the words that Mr. De Martino spoke to you at that time?

A. The words he said was not to worry about a thing. I will take care of matters for you. (T117–4 to 14).

She never testified explicitly that the money given to the appellant was a bribe; neither did she deny that the money was for legal representation. Thus, a review of the State's case at trial demonstrates that the testimony of several witnesses implicated the appellant in the bribery scheme alleged.

The fifth document is a report by Lynch of an interview with Albert Coelho, an employee of Del Nero's tavern. Our review of the report leads us to the conclusion that the report is in no sense exculpatory, the threshold requirement of *Brady*. Upon review of the appellant's brief, it does not appear that any argument is specifically made concerning this document.

The sixth document is a report by J. Michael Breen, a state investigator, concerning an interview with Agnes Del Nero in which she reportedly stated, contrary to her trial testimony, that she had given the appellant the $3,000 at her bar. As with the first report, which contained inconsistencies on who obtained the loan and in what amount, we fail to see how this document might have affected the outcome of the trial.

The final document is a report of a polygraph examination of Joseph Del Nero which concludes that he was "telling substantially the truth." The appellant argues that, while the results of the polygraph test were not admissible, the answers given would be admissible as any other out-of-court statement and that when coupled with the third report, it "would have taken on added significance." Brief at 26. We fail to see the significance or materiality of the answers. They are merely a repetition of testimony provided at the trial that the $3,000 was not a bribe.

### B.

The appellant argues that the court below erred in not applying a more stringent test for determining materiality where, as here, multiple non-disclosures are involved. The court below took account of the multi-

ple non-disclosures involved, did in fact apply the more stringent first tier materiality test of *United States v. Agurs*, 427 U.S. at 104, 96 S.Ct. at 2397, and concluded that there was no reasonable likelihood that the verdict would have been different. We agree with that conclusion.

The appellant's argument hinges on the faulty premise that Agnes Del Nero's testimony was crucial to the prosecution's case. As we demonstrated above, this was highly unlikely. In addition, the combination of all of the suppressed and newly discovered evidence would not have impeached Agnes Del Nero and would not have resulted in a different verdict.

The evidence either: challenges Mrs. Del Nero's memory on the amount of the loan and which of the Del Neros obtained it— not a particularly significant issue; augments Joseph Del Nero's account of the incident—and is therefore cumulative; or is not exculpatory. As to the report of Mrs. Del Nero's involvement with the investigator, as we noted above, even if her testimony was totally disregarded, there is no reasonable likelihood that the verdict would have been different.

### V.

The appellant argues finally that he was deprived of his right to due process because the State courts failed to afford him an evidentiary hearing on his various claims. In *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court set down the standard for determining when a hearing in a federal habeas corpus proceeding is mandatory. A prerequisite to the application of *Townsend*, upon which the appellant here relies, is that there be a material fact or facts in issue or that a resolution of such facts that are in issue is necessary to resolving a question of law. None of these prerequisites is satisfied on this record. Moreover, with respect to his claim of newly discovered evidence, it appears that he was given "a fair hearing on his claim in State Court." 372 U.S. at 317, 83 S.Ct. at 759.

### VI.

For the foregoing reasons, the judgment of the district court will be affirmed.