Edward **FIELDS**, Appellant,

v.

Donald **WYRICK**, Appellee.

No. 81–1245.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1981.

Decided April 23, 1982.

Rehearing and Rehearing En Banc
Denied May 28, 1982.

---

Jeffrey E. Hartnett, Clayton, Mo., for Edward Fields.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Edward Fields appeals from the district court's denial of his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. We reverse the lower court on the ground that Fields' state court conviction was obtained as a result of his involuntary confession. Federal habeas corpus relief, therefore, should have been granted.

Fields, a soldier then stationed at Fort Leonard Wood, was charged with raping a Waynesville, Missouri, woman on September 21, 1974. He was convicted by a jury on March 13, 1975, and was, sentenced to twenty-five years imprisonment. His conviction was affirmed on appeal. *State v. Fields*, 538 S.W.2d 348 (Mo.Ct.App.1976).

Fields subsequently filed three successive motions to set aside his conviction under Rule 27.26 of the Missouri Rules of Criminal Procedure. These motions were denied. *Fields v. State of Missouri*, 596 S.W.2d 776 (Mo.Ct.App.1980); *Fields v. State of Missouri*, 572 S.W.2d 477 (Mo.1978). Fields then sought a writ of habeas corpus, citing various grounds allegedly justifying relief. Only one of these asserted errors concerns us on appeal, *i.e.*, Fields' contention that the trial court erroneously admitted testimony regarding his "involuntary confession."[1]

Our recitation of the circumstances leading up to Fields' confession relies primarily on facts either stipulated to by the parties at the suppression hearing or as set out in the court's opinion affirming Fields' conviction on direct appeal. Fields was arrested on September 25, 1974, and charged with rape. He was released on his own recognizance and retained private defense counsel. After discussing the matter with his counsel and a military attorney, Fields consented to the administration of a polygraph examination in connection with the rape charge. The examination was conducted on December 4, 1974, by Jesse Merl Bourne, Jr., an agent with the United States Army Criminal Investigation Division (CID) at Fort Leonard Wood. Although an attorney is allowed to be present during a CID polygraph examination, Fields' counsel was not invited to be present, nor was he informed that the test would be given that day. Before the polygraph examination was given, Fields was advised that he had the right to remain silent and to have an attorney present, and he signed a written form consenting to the examination.

After the examination was completed, Bourne told Fields that there "had been some deceit" and asked him if he had some explanation as to why his answers were bothering him. Fields thereupon stated that he had had intercourse with the victim on September 21, 1974, but that she had instigated and consented to the contact. Bourne then asked Fields if he wished to discuss the matter further with another CID agent, Charles Fann, and the Waynesville Chief of Police, James Cole. Fields agreed to do so. Police Chief Cole gave Fields the *Miranda* warnings before questioning him. Fields repeated to Cole and Agent Fann his account of what happened on September 21, *i.e.*, that the victim had voluntarily engaged in sexual relations with him at her residence.

Fields sought to suppress the testimony of Police Chief Cole and Agents Bourne and Fann regarding his "confession" to voluntary intercourse. On the day of Fields' trial, a hearing was held on Fields' motion, at the conclusion of which the trial court stated the following:

> Well, I'm going to overrule the Motion to Suppress for the reason that this defendant on several occasions was advised what his rights were.
>
> It's true that he was represented by counsel and he talked to counsel about it. And while I'm inclined to believe that we ought to make every effort to protect the rights of individuals, grant them their constitutional rights, still, after the de-

---

1. Fields also claims that he was denied effective assistance of counsel at his trial, on direct appeal, and in perfecting his 27.26 motions; that the warrant causing his arrest lacked probable cause; and that the jury which convicted him was selected in a manner which systematically excluded women and blacks. Because we agree that Fields' confession was involuntary, we need not reach the other issues raised in his habeas petition.

fendant is advised not on one occasion, but on several occasions, what his rights are, then he voluntarily requests and puts himself in position for making statements which—with the understanding that they might be used against him, I think that in this case that he waived those rights and I would have to overrule the Motion to Suppress.

The trial court did not enter written findings of fact or conclusions of law on the motion to suppress.

The propriety of this ruling was the sole issue raised in Fields' direct appeal of his conviction. The Missouri Court of Appeals stated that Fields' pleadings or briefs did not preserve anything for appellate review, but went on to "briefly" consider Fields' constitutional claim under a "plain error" standard. *State v. Fields, supra,* 538 S.W.2d at 349–350. The court concluded that the motion to suppress was properly denied because "defendant had been repeatedly and amply advised of his rights [and] voluntarily, knowingly and intelligently waived his rights." *Id.* at 350.

 We are mindful of the Supreme Court's recent admonition that in federal habeas corpus proceedings the court must apply a "presumption of correctness" to factual determinations made by the state courts. *See Sumner v. Mata,* 449 U.S. 539,

547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722, 731 (1981). The applicable statute provides that this "presumption of correctness" applies to a state court's "determination after a hearing on the merits of a factual issue * * * evidenced by a written finding, written opinion, or other reliable and adequate written indicia." 28 U.S.C. § 2254(d). The presumption does not, of course, attach to a state court's resolution of a question of federal law or to "a mixed determination of law and fact that requires the application of legal principles to the historical facts of [a] case." *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980).[2] As the Supreme Court has noted, the question of whether or not a defendant has effectively waived his constitutional rights is not one of fact but of federal law. *See Brewer v. Williams,* 430 U.S. 387, 397 n.4, 97 S.Ct. 1232, 1238 n.4, 51 L.Ed.2d 424 (1977). Accordingly, we have accepted those "basic, primary or historical facts"[3] determinated by the state courts,[4] while independently reviewing the legal conclusion drawn therefrom.

After a careful review of the record and the state court's findings, we conclude that Fields did not knowingly and intelligently waive his right to have counsel present at the interrogation described above. Fields' incriminating statements were, therefore,

---

2. The dissent in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), seems to suggest that the majority has eroded this principle by holding that the *Sumner* appeals court had not complied with § 2254(d) even though the ruling at issue was a disagreement with the state court "over the constitutional significance of the facts of the case, and not over the facts themselves." *Sumner v. Mata, supra,* 449 U.S. at 557, 101 S.Ct. at 774, 66 L.Ed.2d at 737. We are not inclined to read more into the majority opinion than is clear from its holding—*i.e.,* that a federal court considering a habeas petition can overturn the factual findings of a state trial or appellate court only if, in the opinion granting the writ, the court clearly states why it considers any of the eight "exceptions" to the § 2254(d) "presumption of correctness" to be applicable. *Id.* at 552, 101 S.Ct. at 771, 66 L.Ed.2d at 734. The majority explicitly reasserted that "even a single federal judge may overturn the judgment of the highest court of a state insofar as it deals with the application of

the United States Constitution or laws to the facts in question." *Id.* at 544, 101 S.Ct. at 768, 66 L.Ed.2d at 729.

3. *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980).

4. As we have noted, the trial court did not enter evidentiary findings and the appellate court merely provided a brief explication of some of the circumstances leading up to Fields' confession. Because we find that no part of the .appeals court's version of the relevant events is inconsistent with our conclusion that the confession was involuntary, we need not reach the issue of whether section 2254(d)'s strictures apply to that court's brief, "plain error" review of Fields' claim. *Cf. Sumner v. Mata, supra,* 449 U.S. at 545, 101 S.Ct. at 768, 66 L.Ed.2d at 730 (§ 2254(d) applies to state appellate court findings made after plenary consideration of petitioners' claim, including review of state court record).

not voluntarily made and should have been suppressed.[5]

■ It has been clear since *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that "the right to have counsel present at [an] interrogation is indispensable to the protection of the Fifth Amendment privilege" against self-incrimination. *Id.* at 469, 86 S.Ct. at 1625. This aspect of the *Miranda* ruling reflects the Court's concern that "the circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators." *Id.*

[4] The importance of the right to have counsel present during a custodial interrogation has recently received renewed emphasis. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that once a suspect invokes his right to counsel, he is not subject to further interrogation until counsel is provided to him, unless the suspect himself initiates dialogue with the authorities. In so ruling, the Court apparently sought to buttress the right to counsel by creating a per se rule restricting the circumstances under which a court can find that the right has been waived. *See* Note, *Edwards v. Arizona: The Burger Court Breathes New Life Into Miranda*, 69 Cal.L.Rev. 1734, 1746–1747 (1981). Objective criteria controls the waiver determination when a suspect has invoked the right to counsel: either counsel must be present at subsequent custodial interrogations or else the dialogue at issue must have been initiated by the accused.

■ The per se rule enunciated in *Edwards* does not resolve the issue present here. Fields and his counsel mutually agreed that Fields should take the polygraph examination, Fields appeared at the examination without his counsel and stated that he did not want counsel present during the examination. Fields thereby "initiated" further dialogue with the authorities after his right to counsel had been invoked. Accordingly, the question of whether Fields waived his right to have his counsel present at the subsequent interrogation becomes more complex. The *Edwards* Court stated that

> if * * * in the course of a meeting initiated by the accused, the conversation it not wholly one-sided [and] the officers * * * say or do something that clearly would be "interrogation" * * * the question would be whether * * * the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Edwards v. Arizona, supra*, at 486 n.9, 101 S.Ct. at 1885 n.9, 68 L.Ed.2d at 387 n.9.[6] The burden of proving that a defendant has knowingly and voluntarily waived his right to have counsel present at an interrogation rests with the government, and the Supreme Court has characterized that burden as a "heavy" one. *See Miranda v. Arizona, supra*, 384 U.S. at 475, 86 S.Ct. at 1628.

Regardless of whether the *Edwards* per se rule is strictly applicable, the clear import of the *Edwards* decision is to affirm that a defendant's right to have counsel present at custodial interrogations must be zealously guarded, particularly when the

5. There is no question that Fields' "confession" was material to his conviction because, if believed, it definitively established that Fields had intercourse with the victim on the day of the rape. The rape victim never saw her assailant, except for his hand, because her face was covered by a pillowcase throughout the assault. When asked at trial if the defendant's hand was the one she saw that day, the victim replied "no."

6. The fact that Fields "initiated" the meeting with the authorities does not render the resulting interrogation "noncustodial," as the state seems to suggest; it merely changes the standard by which the existence vel non of a waiver is determined. Nor was the interrogation "noncustodial" simply because Fields was not in jail at the time the polygraph was run. Fields had been arrested on the rape charge, and was released on his own recognizance only under the condition that his company commander know where he was at all times.

defendant has retained counsel and thereby has expressed a desire to deal with the authorities through counsel. We cannot find that the government proved a knowing and intelligent waiver in this case without significantly undermining that principle.

■ In our view, the right to have counsel present is especially crucial where, as here, the authorities utilize the "results" of a polygraph examination to elicit incriminating statements from the accused. It has been suggested that the primary utility of polygraphs administered in the course of a criminal investigation is to induce confessions from the accused. *See* Lykken, *A Tremor in the Blood: Uses and Abuses of the Lie Detector*, 214–215 (1981).[7] This Circuit has refused to admit the results of unstipulated polygraph examinations into evidence because "the polygraph does not command scientific acceptability and * * * is not generally believed to be sufficiently reliable in ascertaining truth and deception to justify its utilization in the trial process." *United States v. Alexander*, 526 F.2d 161, 164 (8th Cir. 1975). *Accord, United States v. Masri*, 547 F.2d 932, 936 (5th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *United States v. Skeens*, 494 F.2d 1050, 1053 (D.C.Cir.1974). *See DeMartino v. Weidenburner*, 616 F.2d 708, 713 (3rd Cir. 1980); *United States v. Russo*, 527 F.2d 1051, 1058–1059 (10th Cir.), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976). The Missouri state courts refuse to allow any polygraph examination results into evidence at trial, even if the parties have stipulated to the use of such evidence. *See State v. Biddle*, 599 S.W.2d 182, 191 (Mo.1980) (*en banc*); *State v. Weindorf*, 361 S.W.2d 806, 811 (Mo.1962).

The Missouri Supreme Court recently stated that

> [g]iven the large margin of error stated by some experts and the disagreements among the experts as to the polygraph's reliability, a stipulation as to the admissibility of its results is, in effect, an agreement to rely upon chance rather than upon competent evidence, as well as an agreement regarding scientific opinion beyond the competence of either party to understand or evaluate.

*State v. Biddle, supra*, 599 S.W.2d at 190 n.10.

The questionable reliability of so-called "lie-detectors"[8] does not, however, diminish the significant psychological impact the device can have on the examinee. *See* Lykken, *supra*, at 211–212. It may seem futile to maintain silence in the face of the examiner's statement that the machine, cloaked with the mystique of scientific infallibility, has shown the accused to be lying. Furthermore, the examiner is not likely to be challenged by the accused when he indicates that the machine has shown "some deceit;" the accused, and frequently the court reviewing the circumstances of a polygraph-induced confession, has no way of knowing what, in fact, the test results revealed.[9]

■ We do not, of course, imply that the use of a polygraph and its "results" is the kind of "trickery" that necessarily renders post-test confessions involuntary. We merely hold that because of the significant potential for abuse inherent in a post-polygraph interrogation, the courts must be particularly cautious about finding that a

---

7. Professor Lykken cites, for example, the experience of the Los Angeles Police Department polygraph laboratory. Their examiners estimate that they obtain confessions from twenty-five percent of the suspects subjected to polygraph tests. Lykken, *A Tremor in the Blood: Uses and Abuses of the Lie Detector*, 208 (1981).

8. As this Court noted in *United States v. Alexander*, 526 F.2d 161, 165 (8th Cir. 1975),

 [t]here is no "lie detector." The polygraph machine is not a "lie detector," nor does the

operator who interprets the graph detect "lies." The machine records physical responses which may or may not be connected with an emotional reaction and that reaction may or may not be related to guilt or innocence.

*quoting*, H.R.Rep.No.198, 89th Cong., 1st Sess. 13 (1965). *See* Lykken, *supra*, at 55–62.

9. That was the case here: the results of Fields' polygraph examination were not part of the record before the district court or on appeal.

suspect has "waived" his right to have counsel present at such an interrogation.

■ There is no question that Fields waived his right to have counsel present while the examination itself was being conducted. Fields was advised that he did not have to answer any of the examiner's questions and that he could have an attorney present at the examination. Prior to the beginning of the polygraph examination, Fields stated that he did not want a lawyer present and signed a written consent to the examination. This fact is not sufficient to meet the government's burden to prove that Fields knowingly and intelligently waived his right to have counsel present at the post-test interrogation.

The line we draw is not an artificial one. In *Henry v. Dees*, 658 F.2d 406 (5th Cir. 1981), the Fifth Circuit held that the defendant's waiver of his constitutional right to remain silent and have counsel present during a polygraph examination did not extend to questions propounded by the examiner after the defendant was "off" the polygraph machine. The defendant, Gilbert Henry, with his counsel present, had signed written consent forms waiving his constitutional safeguards for the duration of the polygraph examination and stipulating to the admissibility of any statements of guilt procured by the examiner during the examination. The examiner, administering the examination without defendant's counsel present, interrupted his questioning, informed the defendant that he had "failed" and asked did he "want to tell me about the thing?" The court concluded that the inculpatory statements made by the defendant in response to that inquiry were not, under the totality of the circumstances, freely and voluntarily made and, therefore, should have been suppressed. *Id.* at 408–409.

In refusing to extend Henry's examination consent to the post-test questioning, the Fifth Circuit noted that "[n]either Henry nor his counsel contemplated that the instruments they signed exposed Henry to questioning which was not an integral part of a polygraph examination." *Id.* at 410. There is similarly no evidence that Fields or his lawyer anticipated that the CID officer would attempt to elicit incriminating statements from Fields after the examination was run. Fields' lawyer stated at the suppression hearing that he and the defendant only wanted a "polygraph to be run and that we be given results." It was his understanding that "the running of the polygraph would have merely shown deceit or non-deceit and would have been used for the purposes of a possible pretrial negotiation." [10] Agent Bourne, the polygraph examiner, did not attempt to dispel this mistaken impression before the examination began. Bourne testified that he did not inform Fields that if the machine indicated that his responses were deceitful that Bourne would continue the questioning "to find the truth." Nonetheless, Fields "was subjected to interrogation of a[n] [investigative] officer, out of the presence of his counsel, and without the benefit of *meaningfully timed Miranda* warnings." *Id.* (emphasis added). "The [officer] moved from administration of a polygraph examination to police interrogation without pausing to remind [the defendant] of his privilege against self-incrimination and his right to have counsel present during questioning." *Id.* at 409.[11] As a result, the officer obtained highly incriminating admissible testimony from the defendant, instead of merely determining the results of the poly-

10. Fields consented to the polygraph examination because it was his and his commanding officers' hope that a "successful" polygraph examination of Fields would encourage the authorities to drop the charges against Fields so that he could graduate and transfer out with the rest of his basic training class.

11. In response to questioning by the state's attorney, Bourne testified:

Q. After the polygraph examination was done, did you have any further conversations with this man?
A. Yes sir.

\* \* \* \* \* \*

Q. Did you indicate to him that he did not have to make any further statements other than what he had already done on the polygraph examination?
A. No sir, we continued to discuss it.

graph examination—results which could not have been introduced at Fields' trial. *See State v. Biddle, supra,* 599 S.W.2d at 191; *State v. Weindorf, supra,* 361 S.W.2d at 811.

Because we hold that Fields' consent to the polygraph did not constitute a waiver of his right to have counsel present at the post-test interrogation,[12] we then must inquire whether he subsequently waived this right.[13] The government has simply introduced no evidence from which we can conclude that when Fields was confronted with the accusatory statement that the "lie-detector" showed he was lying, he waived his right to the protection of counsel in this coercive situation.

▮ After Fields "confessed" to Agent Bourne, he was requestioned by Police Chief Cole and CID Officer Fann. This questioning was preceded by *Miranda* warnings. These warnings, however, could hardly be considered "meaningfully timed." Fields had already told Bourne his version of the events of September 21, 1974, a story that was merely repeated to the other officers. Cole's and Fann's testimony at trial regarding the substance of Fields' "confession" was cumulative. Therefore, even if we were to consider the belated warnings to be sufficient evidence that Field voluntarily, knowingly and intelligently waived his right to have counsel present, the warnings—and the alleged waiver—simply came too late.

▮ We note that the troublesome circumstances of this case could have been easily avoided. If the polygraph did, in fact, detect physiological responses by Fields that the examiner associated with deceitful testimony, it would have been a simple matter for him to contact Fields' counsel before proceeding to interrogate the defendant. This action, of course, was not constitutionally commanded. But it would have prevented the situation we are presented with here—a defendant, in the absence of his retained counsel, giving key inculpatory testimony to an investigative officer, without any indication in the record that he knowingly and intelligently waived his right to have his counsel present.

**12.** The Missouri Court of Appeals, in its opinion affirming Fields' conviction, erroneously considered Fields' consent to the polygraph to be sufficient evidence of knowing and intelligent consent to the post-test interrogation. The court bolstered its consent finding by stating that Fields testified that before the test began he was read his rights and "I understood it to be that I didn't have to make any statements, do anything without my counsel being present." The transcript reveals, however, that Fields in fact stated that *at the time of his arrest,* he understood that he did not have to make any statements before he retained counsel and had him or her present. As the Supreme Court has noted, "waiver requires not merely comprehension but relinquishment." *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). *Miranda* warnings successfully imparted to Fields at the time of his arrest no more constitute conclusive evidence of a post-polygraph waiver than does the fact that Fields waived his right to protection of counsel during the examination.

**13.** In our view, neither the *Henry v. Dees* decision, nor ours in the instant case, is inconsistent with our Court's opinion in *United States v. Little Bear,* 583 F.2d 411 (8th Cir. 1978). Little Bear, under investigation for the manslaughter of her husband, agreed to take a polygraph examination. Before the examination began, she signed a written consent form. She therein stated that she was consenting to an *interview* with the FBI, *a part of which* was to be the polygraph. The examiner attached the apparatus to Little Bear, and asked her if she had stabbed her husband. She responded in the affirmative and said she wanted to talk about it. The polygraph was removed and Little Bear confessed. The Court held that the confession was voluntarily made.

A number of factors distinguish *Little Bear* from the situation present here. Of primary importance is the fact that Little Bear had not retained counsel when she went to take the polygraph. Accordingly, the Court was not required to determine whether the agents' procedure had deprived Little Bear of a previously asserted right to deal with the authorities through counsel.

Furthermore, Little Bear expressly consented to an interview that was not confined to questions propounded as part of the polygraph examination. There was no question then of whether the examiner had improperly exceeded the scope of what Little Bear had consented to. Finally, and relatedly, Little Bear's "confession" was prompted by the examiner's first and only question propounded while she was on the machine. She was not subjected to "post-test" interrogation prompted by alleged deceitful responses.

For the reasons set forth above, we remand to the district court with directions to it to order the state to either release the appellant or afford him a new trial. The district court shall fix a reasonable time period within which the state must provide this relief.

ROSS, Circuit Judge, dissenting.

I am compelled to dissent from the majority's conclusion that the appellant's confession during the post-polygraph test interview was involuntarily given because "Fields did not knowingly and intelligently waive his right to have counsel present" at that interrogation. It is well established "that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981), *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). However, accepting the basic facts presented in the majority opinion, it seems clear that Fields must be viewed as having waived his rights to have counsel present at the interrogation in accordance with this standard.

On September 25, 1974, when Fields was arrested and charged with the rape he was given his *Miranda* warnings. He admitted in his suppression hearing that he understood the meaning of these rights when he stated that "I understand it to be that I didn't have to make any statements, do anything without my counsel being present." Fields thereupon consulted with both privately retained and military counsel, and consented to a polygraph examination. Prior to undergoing the polygraph on December 4, 1974, Fields was again fully advised of his rights. He was given and signed a written consent document which informed him of his rights under the Uniform Code of Military Justice and the Eighth Amendment. In addition, the agent read the defendant the following detailed statement of his "rights":

"Before I ask you any questions, you must understand your rights. *You do not have to answer my questions or say anything. Anything you say or do can be used as evidence against you in a criminal trial. You have a right to talk to a lawyer before questioning or have a lawyer present with you during the questioning.* This lawyer can be a civilian lawyer of your own choice, or a military lawyer, detailed for you at no expense to you. Also, you may ask for a military lawyer of your choice by name and he will be detailed for you if superiors determine he's reasonably available. *If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate.* Do you want a lawyer at this time?" Defendant answered, "No."

*State v. Fields*, 538 S.W.2d 348, 350 n.1 (Mo.Ct.App.1976) (emphasis added). It is important to note that Fields was clearly advised that he could stop answering questions *at any time* or speak to a lawyer *even if he signed the waiver certificate.* After Fields had made his confession to consensual sexual intercourse with the victim to Agent Bourne, he was again given his *Miranda* warnings before he repeated his confession to the police.

Thus, it is clear that Fields was given full warnings concerning his rights at least twice before he made his confession to Agent Bourne. Furthermore, there is absolutely no indication that Fields did not fully comprehend those rights and the consequences of any statement that he made. To the contrary, Fields' admission that he understood what his *Miranda* rights meant, even if made in reference to post-arrest warnings, strongly supports the conclusion that Fields still understood what those rights meant when he was advised of them again prior to the polygraph, especially in light of the fact that Fields had been ad-

vised by counsel prior to taking the polygraph. There is simply nothing in the stated facts which would cast doubt as to Fields' continuing comprehension of his rights at the time he took the examination. Moreover, although the majority opinion notes that Fields' waiver of *Miranda* rights immediately after his confession to Agent Bourne but prior to his repeated confession to the police are not timely as to that first confession, Fields' continuing waiver of those rights is at least indicative of his continued comprehension and desire to waive those rights.

If continued waiver of counsel after numerous clear warnings is not sufficient to show voluntary, knowing and intelligent waiver, I am somewhat perplexed as to what would be sufficient in the circumstances of this case. As I read the majority's opinion, only two things would have made the confession voluntary: (1) the presence of Fields' counsel at the polygraph, or (2) giving Fields another set of *Miranda* warnings after the polygraph had been turned off but before any further questioning. As the court notes in its opinion, contacting Fields' counsel, in the absence of a request by Fields to do so, is not constitutionally required. Furthermore, it is difficult to understand, in the circumstances of this case, how one more recitation of *Miranda* warnings would prove knowing and intelligent waiver if waiver of two prior sets of warnings, one of which was given minutes before, does not.

Moreover, I cannot agree that the line drawn between the interrogation undertaken during which the polygraph was attached and the questioning following the polygraph is not an artificial and hypertechnical one. The substance of the entire transaction was interrogation to which Fields clearly consented as indicated by his waiver. Although the results of the polygraph could not be used against Fields under Missouri law, it is not clear that any admission made by Fields during the course of that examination would also be inadmissible. There is substantial support for the rule that the mere fact that a confession was made in anticipation of, *during*, or following a polygraph examination does not render the confession involuntary and inadmissible. *See* 89 A.L.R.3d 230, 236 (1979), and cases cited therein.

I do not believe that *Henry v. Dees*, 658 F.2d 406 (5th Cir. 1981) supports the requirement of additional *Miranda* warnings after the polygraph examination but before further interrogation. As noted by that court, the question is whether a waiver can be viewed as voluntary, knowing, and intelligent in the total circumstances of a case. However, the factual circumstances in *Dees* are clearly distinguishable from those in the present case. It seems apparent upon reading the *Dees* opinion that the court's conclusion that the confession obtained was involuntary rested very heavily on the fact that the defendant in the case was mentally retarded. *Id.* at 411. Moreover, unlike the waiver and consent to a polygraph which was signed in the instant case where Fields could at any time during the examination stop the questioning and request counsel, the waiver in *Dees* precluded the presence of the defendant's counsel at the polygraph. *Id.* at 408. This factor was also critical in the court's determination that the initial waiver was not valid when the examiner shifted from the polygraph to a general interrogation. *See id.* at 409–10. Finally, it must be noted that the lie detector examination upon which the examiner based his statement that the defendant had failed the examination was never completed. *Id.* at 410. The Fifth Circuit clearly noted the relevance of such a hint of deception by the police in obtaining a confession. *Id.* In the instant case there is no evidence of any mental subnormality on the part of Fields; it is clear that Fields had a right to the presence of counsel during all phases of the examination and knew he did; and there is no evidence that the *completed* polygraph examination was used as a ruse to interrogate Fields outside the presence of his counsel.

In addition to the fact that I believe that *Henry v. Dees* does not support the majority's conclusion, I cannot agree that the majority's opinion is not inconsistent with this

court's decision in *United States v. Little Bear*, 583 F.2d 411 (8th Cir. 1978) (Lay, Bright and Ross). In *Little Bear* the defendant was questioned by BIA agents concerning her husband's death the previous night. She was advised of her rights and signed a waiver form. Two months later she was again questioned, this time by an FBI agent who decided to give Little Bear a polygraph examination. Prior to taking the polygraph she was given a "Consent to be Interviewed with Polygraph" form which she signed. She was also advised by the agent of her constitutional rights and she signed that form's waiver provision. During the polygraph examination Little Bear was asked if she stabbed her husband. She responded in the affirmative and said she wanted to talk about it. At this point she was not reminded of her right to an attorney or to remain silent. Upon further interrogation, Little Bear signed a written confession. On appeal, Little Bear contended that the confession should have been suppressed because it was not voluntarily given under the circumstances. This court held that Little Bear had voluntarily confessed.

The factors upon which the majority distinguishes *Little Bear* are not convincing. First, the fact that Little Bear had not retained counsel seems to be of little relevance to the instant case, since Fields, although retaining counsel, had not asserted his right to deal with the authorities through counsel. If anything, the absence of counsel in *Little Bear* would seem to require a closer scrutiny of the voluntariness of the confession. Secondly, there is nothing to indicate that this court's holding in *Little Bear* even remotely turned on the fact that the polygraph form which the defendant signed might be construed to consent to a broader interview than just a polygraph. In fact, the court, in arriving at the conclusion that Little Bear's confession was voluntary, knowing, and intelligent, relied explicitly on the reasoning of the Ninth Circuit in *Keiper v. Cupp*, 509 F.2d 238 (9th Cir. 1975), which is factually very similar to the instant case. In rejecting Keiper's habeas claim that he should have been given

an additional *Miranda* warning after the polygraph, but before interrogation resulting in a confession the Ninth Circuit stated Keiper "had been advised many times of his rights prior to, and at the time of the polygraph test, there is no reason to believe that he was not fully aware of those rights during the crucial period when his final story was taped." 509 F.2d at 238.

Similarly, in the dispositive passage of *Little Bear* this court stated:

This case somewhat parallels *Keiper* in that Ms. Little Bear also signed a waiver of rights form before a polygraph examination, indicated at some subsequent point that she wanted to offer a statement, and later claimed her statement was made involuntarily. Additionally, in the instant case, as in *Keiper*, the district court found Ms. Little Bear had voluntarily confessed and knowingly and intelligently waived her rights even though no second, post-polygraph *Miranda* warning was given.

*United States v. Little Bear*, 583 F.2d at 414. The reasoning expressed in *Keiper* and *Little Bear* appears to be generally followed. *See People v. Barreto*, 256 Cal. App.2d 392, 64 Cal.Rptr. 211 (1967); *State v. Henry*, 352 So.2d 643 (La.1977); *Turner v. State*, 76 Wis.2d 1, 250 N.W.2d 706 (1977).

In summary, *Little Bear* and the apparent weight of authority would seem to support a holding that under the totality of the circumstances, Fields' waiver and confession was voluntary, knowing, and intelligent when he was clearly advised of his rights on numerous occasions prior to his confession. This seems especially true in light of the fact that this court found a voluntary, knowing and intelligent waiver and confession in *Little Bear*, a case involving an unsophisticated, uncounseled, and emotionally distraught Indian woman. Finally, I would note that I can find nothing in *Edwards v. Arizona, supra*, a case clearly distinguishable from the instant case on its facts and the legal principles involved, which dictates the result reached in the majority's opinion in this case.

For the foregoing reasons, I would affirm the district court's denial of the appellant's petition for habeas corpus relief.