**UNITED STATES of America, Appellee,**

v.

**Robert Eagle ELK, Jr., a/k/a Bobby Bear, Appellant.**

**No. 81–2425.**

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1982.

Decided June 30, 1982.

Rehearing and Rehearing En Banc Denied Aug. 27, 1982.

Philip N. Hogen, U. S. Atty., D. S. D., Sioux Falls, S. D., Ted L. McBride, Asst. U. S. Atty., Rapid City, S. D., for appellee.

Gary D. Jensen, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S. D., for appellant.

Before ROSS, McMILLIAN and GIBSON, Circuit Judges.

PER CURIAM.

On May 21, 1981, the appellant, Robert Eagle Elk, Jr. was indicted for voluntary manslaughter under 18 U.S.C. §§ 1153 and 1112 (1976). On November 26, 1981, a jury returned a verdict of guilty on the lesser included offense of involuntary manslaughter, and the district court[1] entered judgment on December 11, 1981. Of the several trial court errors upon which Eagle Elk grounds this appeal only his assertion that the trial court erred in failing to suppress a statement that he made to a federal investigator following a polygraph examination concerns us on appeal. For the reasons set forth herein, we reverse.

Only a brief outline of the facts is necessary for purposes of this decision. Eagle Elk's conviction stemmed from the beating death of Richard Schreiner on April 25, 1981. Eagle Elk, Schreiner, and another individual, Anthony Jacobs, were traveling together on the evening of April 25, 1981, in Eagle Elk's automobile. Schreiner was carrying a rifle. Apparently, an argument broke out between Schreiner and Eagle Elk. According to Eagle Elk, Schreiner poked him in the side with the rifle, and Eagle Elk stopped the automobile. Schreiner jumped

---

1. The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

out of the car and while threatening Eagle Elk, cocked, aimed and pulled the trigger on the rifle. When the rifle failed to fire, Eagle Elk grabbed the rifle from Schreiner and struck him in the face with a fist. Schreiner then took out a pistol and cocked the pistol while again threatening Eagle Elk. Eagle Elk struck Schreiner on the left side of the neck with the butt of the rifle. The blow knocked Schreiner to the ground. At this point, he set the rifle next to the passenger side of the automobile and took cover.

Eagle Elk testified at trial that Jacobs became involved in the affray when, as Jacobs was attempting to get out of the back seat of the car, Schreiner pushed the car door and pinned Jacobs' legs between the car door and the car. A fight between Jacobs and Schreiner then ensued in which Jacobs, brandishing a knife, slashed at Schreiner. According to Eagle Elk, Jacobs then grabbed the rifle laying against the car and struck Schreiner in the head with the rifle, knocking him to the ground. Jacobs then smashed the rifle butt over Schreiner's head again with sufficient force to break the stock of the rifle into two pieces.

Anthony Jacobs denied that he participated in any way in the altercation. According to Jacobs, it was Eagle Elk who, after striking Schreiner in the face with his fist and knocking him to the ground, struck Schreiner in the head a total of four times with the butt of the gun.

After his arrest,[2] Eagle Elk, upon the advice of counsel, volunteered to undergo a polygraph examination on July 23, 1981. Eagle Elk's counsel was not present while the examination was being conducted. The examination was conducted by a Federal Bureau of Investigation officer, Agent Diem. Prior to being given the polygraph, Eagle Elk was advised by Agent Diem of his *Miranda* rights, signed a form stating that he understood those rights, and signed a polygraph interview consent form. The

examination was conducted outside the presence of Eagle Elk's counsel. According to Eagle Elk, after the polygraph examination was completed, Agent Diem advised him that he was not telling the truth, and continued the interrogation. The government admitted that appellant was not given an additional *Miranda* warning after the polygraph examination but prior to this interrogation. During this interrogation Eagle Elk made an incriminating statement to the effect that he had struck Schreiner twice in the head with the rifle. According to Eagle Elk he requested to see his attorney prior to making this incriminating statement. However, Agent Diem testified at a suppression hearing held October 13, 1981, that Eagle Elk had not requested to see his attorney until after the incriminating statement had been made.

■ Eagle Elk argues that under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), his incriminating statement allegedly made after requesting to see his counsel should have been suppressed. In *Edwards* the Supreme Court held that interrogation must cease when an accused requests counsel, and that an accused is not subject to further interrogation unless he initiates further conversation with the police. *Id.* at 484–85, 101 S.Ct. at 1884–85. We do not believe *Edwards* controls the instant case in that at the suppression hearing the trial court accepted Agent Diem's testimony that Eagle Elk did not request an attorney until after he had made the incriminating statement. Such findings of fact by the trial court in suppression proceedings are subject to reversal only if they are found to be clearly erroneous, *see, e.g., United States v. Poitra*, 661 F.2d 98, 98 (8th Cir. 1981); *United States v. Doby*, 598 F.2d 1137, 1140 (8th Cir. 1979), and we cannot conclude on the basis of the record that the trial court made a clearly erroneous determination in the instant case.

**2.** Eagle Elk was arrested on April 28, 1981. On April 25, 1981, the night of Schreiner's death, Eagle Elk had been interviewed by an investi-

gator with the Oglala Sioux Tribal Police. Prior to this interview, Eagle Elk was fully advised of his constitutional rights. [Tr. 44]

■ However, Eagle Elk also contends that his incriminating statement should have been suppressed because, in the absence of an additional *Miranda* warning after the polygraph examination but prior to further interrogation, the statement must be viewed as not being voluntarily made. In light of this court's recent decision in *Fields v. Wyrick*, 682 F.2d 154 (8th Cir. 1982), we feel compelled to agree. In *Fields* this court reversed a rape conviction on the grounds that it was obtained as a result of an involuntary confession. The relevant circumstances in *Fields* are virtually identical to those in the instant case. Fields, upon the advice of counsel, consented to a polygraph examination to be conducted by an agent of the United States Army Criminal Investigation Division (CID). Fields' attorney was not present at the examination. Before the test was administered, Fields was fully advised of his constitutional rights and he signed a written form consenting to the polygraph examination. When the agent administering the examination advised Fields that the test indicated he was not telling the truth and subjected Fields to further interrogation without additional *Miranda* warnings, Fields made the incriminating statement that he had engaged in consensual sexual intercourse with the eighty-one year old victim.

This court held that "Fields did not knowingly and intelligently waive his right to have counsel present at the interrogation described above. Fields' incriminating statements were, therefore, not voluntarily made and should have been suppressed." *Fields v. Wyrick, supra,* at 158. Without engaging in an extensive discussion of the court's reasoning which led to this conclusion, we simply note that we are unable to distinguish the relevant factual circumstances presented by the instant case from those in *Fields.* Therefore, on the basis of this court's decision in that case, we reverse appellant's conviction for involuntary manslaughter, and remand to the district court with directions to order the release of the appellant or provide a new trial within a reasonable period of time.[3]

ROSS, Circuit Judge, specially concurring.

I concur in the result in this case only because I am firmly convinced that it is required by this court's recent broad holding in *Fields v. Wyrick, supra.* Nevertheless, for the reasons stated in my dissenting opinion in *Fields,* I am steadfast in my belief that *Fields* was wrongly decided and inconsistent with this court's prior decision in *United States v. Little Bear,* 583 F.2d 411 (8th Cir. 1978).

The majority's conclusion in *Fields v. Wyrick* that the defendant's confession was involuntary does not rest on considerations of coercive conduct by the polygraph administrator, Fields' age, intelligence, emotional condition, or any other factors which

---

**3.** As noted previously, Eagle Elk has raised several other issues on this appeal relating to rulings made by the district court during trial proceedings. In light of our reversal of Eagle Elk's conviction, we need not reach these other assignments of error. However, because Eagle Elk may undergo a second trial, at least brief mention should be made of the appellant's challenges to a district court ruling precluding the appellant from using Anthony Jacobs' prior conviction on petty theft for impeachment purposes.

Jacobs' conviction stemmed from the theft of gunpowder from his father's garage. The district court, citing *United States v. Fearwell,* 595 F.2d 771, 776 (D.C.Cir.1978), refused to allow defendant to impeach Jacobs on the basis of his conviction because it determined that petit theft did not involve "dishonesty or false state-ment" as required under Fed.R.Evid. 609(a)(2). Cf. *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) (*dicta*—petit larceny not admissible under Rule 609(a)(2)); *Government of Virgin Islands v. Testamark,* 528 F.2d 742, 743 (3d Cir. 1976) (petit larceny does not necessarily involve *crimen falsi* so as to be admissible for impeachment purposes). *But cf. United States v. Brown,* 603 F.2d 1022, 1029 (1st Cir. 1979) (petit larceny conviction could be used for impeachment); *United States v. Carden,* 529 F.2d 443, 446 (5th Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 134, 50 L.Ed.2d 121 (1976) (petit larceny admissible since it involved dishonesty). In the circumstances of this case we cannot conclude that the district court erred in refusing to admit Jacobs' prior petit theft convictions.

clearly would be relevant to a determination of whether he might not have voluntarily, knowingly, and intelligently made the incriminating statement or waived his right to have counsel present. Instead, the majority relies solely on the facts that: (1) polygraph interrogation inherently holds "significant potential for abuse," *see Fields v. Wyrick, supra,* at 159; (2) even though Fields submitted to the polygraph upon the advice of his counsel, was fully advised of his constitutional rights and signed a written consent to the polygraph examination, there was "no evidence that Fields or his lawyer anticipated that the CID officer would attempt to elicit incriminating statements from Fields after the examination was run," *id.* at 160;[4] and (3) Fields was questioned immediately after administration of the polygraph without being reminded of his right against self-incrimination and his right to have counsel present. *Id.* at 160.

4. As I noted in my dissent in *Fields v. Wyrick,* 682 F.2d 154, at 162 (8th Cir. 1982) (Ross, J., dissenting), the following detailed statement of rights was read to Fields before the polygraph was administered:

"Before I ask you any questions, you must understand your rights. *You do not have to answer my questions or say anything. Anything you say or do can be used as evidence against you in a criminal trial. You have a right to talk to a lawyer before questioning or have a lawyer present with you during the questioning.* This lawyer can be a civilian lawyer of your own choice, or a military lawyer, detailed for you at no expense to you. Also, you may ask for a military lawyer of your choice by name and he will be detailed for you if superiors determine he's reasonably available. *If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate.* Do you want a lawyer at this time?" Defendant answered "No."

*State v. Fields,* 538 S.W.2d 348, 350 n.1 (Mo.Ct. App.1976) (emphasis added).

Apparently, the majority in *Fields* has now engrafted an additional requirement that unless additional *Miranda* warnings are given after the polygraph but before further questioning, the initial *Miranda* warnings and waiver must be supplemented by not only advising the defendant that anything he says or does during the questioning may be used against him, and that

Thus, I am left with no alternative but to conclude that the majority in *Fields* has created a per se rule that, even though a defendant has been fully advised of his constitutional rights and has consented to a polygraph interrogation, his confession made after he has been advised that his polygraph examination shows deceit is involuntary unless the defendant is given an additional *Miranda* warning between the polygraph and the immediately subsequent questioning, or the government has explicitly advised the defendant prior to the polygraph that he may undergo questioning after the polygraph examination. Apparently, this rule obtains regardless of whether the defendant might be considered to understand completely his rights to remain silent and to have an attorney present at any time. *See Fields v. Wyrick, supra,* at 163 (Ross, J., dissenting). As I noted in *Fields,* the majority in *Fields* failed to offer convincing support for such a rule.[5]

he may stop answering questions or speak to a lawyer at any time, but must advise the defendant that questions may be asked after the polygraph examination had been completed.

5. Although the majority in *Fields* refers to the Supreme Court's recent decision in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) as somehow providing some support for its holding in *Fields, see, e.g., Fields v. Wyrick, supra,* at 158, I am at a loss to see how *Edwards* has any relevance whatsoever to the question presented in *Fields* or in the instant case. Moreover, the majority in *Fields* appears to admit this when it states: "The per se rule enumerated in *Edwards* does not resolve the issue present here," since Fields "initiated further dialogue with the authorities after his right to counsel had been invoked." *Fields v. Wyrick, supra,* at 158.

As the Supreme Court noted in *Edwards:*

If * * * in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

Moreover, I believe that any attempt to distinguish the instant case from *Fields* would result in reliance on the kind of irrelevant factual differences which characterizes the majority's attempt in *Fields* to distinguish this court's prior opinion in *United States v. Little Bear, supra.* In *Little Bear* the defendant was questioned by BIA agents concerning her husband's death. She was fully advised of her constitutional rights and signed a waiver form. Two months later she was again questioned, this time by an FBI agent, and she consented to take a polygraph examination. Prior to taking the polygraph she was given a "Consent to be Interviewed with Polygraph" form which she signed. She was also advised by the agent of her constitutional rights and she signed that form's waiver provision. During the polygraph examination Little Bear was asked if she stabbed her husband. She responded in the affirmative and said she wanted to talk about it. At this point she was not reminded of her right to an attorney or to remain silent. Upon further interrogation, Little Bear signed a written confession. On appeal, Little Bear contended that the confession should have been suppressed because it was not voluntarily given under the circumstances. This court held that the trial court did not err in concluding that "Mrs. Little Bear had voluntarily confessed and knowingly and intelligently waived her rights even though no second, post-polygraph *Miranda* warning was given." 583 F.2d at 414.

In distinguishing *Little Bear*, the majority in *Fields* relied primarily on the fact that "Little Bear had not retained counsel when she went to take the polygraph," and therefore, "the Court was not required to determine whether the agent's procedure had deprived Little Bear of a previously asserted right to deal with the authorities through counsel." *Fields v. Wyrick, supra,* at 161, n. 13. However, it must be noted that Fields, although retaining counsel, had not asserted his right to counsel at the polygraph examination, and in fact, as the majority noted in *Fields*, must be viewed as having initiated the further dialogue with

authorities. *Id.* at 158. As the Supreme Court's opinion in *Edwards v. Arizona* clearly indicates, in either the *Little Bear* factual circumstances or the *Fields* factual circumstances, the basic standard for determining the voluntariness of the confession is the same, i.e., "whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver is knowing and intelligent * * * under the totality of the circumstances * * *." 451 U.S. at 486 n.9, 101 S.Ct. at 1885 n.9. *See id.* at 482, 101 S.Ct. at 1883.

The majority in *Fields* also appears to have found some distinguishing significance in the label attached to and the wording of the form Little Bear signed in consenting to the polygraph examination. The FBI form which Little Bear signed was entitled "Consent to be Interviewed with Polygraph" and stated that she agreed to the "use of a polygraph * * * during this interview or any part of it." *United States v. Little Bear, supra,* 583 F.2d at 412. The majority in *Fields* construed this form to somehow indicate a broader scope of consent to be interrogated than did the CID form in *Fields.*

First, it must be emphatically noted that there is absolutely no indication in the opinion in *Little Bear* that the court's decision even remotely turned on the wording of the FBI polygraph consent form. Furthermore, placing any legal or practical significance upon the use of the word "interview" in the FBI consent form used in *Little Bear* appears to raise inconsequential form over real substance.

*Little Bear, Fields* and the instant case all involve factual circumstances in which a defendant has clearly and fully been advised on at least two occasions prior to the administration of the polygraph of the constitutional rights to remain silent and to the presence of counsel during any questioning by the authorities. Furthermore, I can find no evidence in any of these cases that the defendants did not fully comprehend the meaning and the consequences of a waiver of those rights. As I stated in *Fields*, in these circumstances, "it is difficult to un-

derstand * * * how one more recitation of *Miranda* warnings would prove knowing and intelligent waiver if waiver of two prior sets of warnings, one of which was given minutes before [an incriminating statement is made] does not." *Fields v. Wyrick, supra*, at 163 (Ross, J., dissenting). Nevertheless, *Fields* seems to dictate that, in the circumstances of this case, another *Miranda* warnings should have been given between the polygraph examination and the following interrogation in order to find Eagle Elk's confession voluntary. For this reason, I am compelled to concur in the court's holding in the instant case that Eagle Elk's incriminating statement made during the post-polygraph questioning was not voluntarily made, and, consequently, his conviction obtained through the use of that statement must be reversed.

JOHN R. GIBSON, Circuit Judge, concurring.

I concur in the per curiam opinion of the court only because *Fields v. Wyrick*, 682 F.2d 154 (8th Cir. 1982) requires this action. I agree with Judge Ross in his specially concurring opinion that *Fields v. Wyrick* is in conflict with *United States v. Little Bear*, 583 F.2d 411 (8th Cir. 1978). *Fields v. Wyrick, supra*, relies on *Henry v. Dees*, 658 F.2d 406 (5th Cir. 1981) although, unlike *Henry*, it did not involve a defendant with limited mental ability. I agree with the reasoning in Judge Ross' specially concurring opinion. I am concerned that *Fields v. Wyrick* has created a per se rule that finds no waiver even when repeated *Miranda* warnings have been given.