UNITED STATES of America, Appellee,

v.

**Wilfred Joseph JACKSON, Appellant.**

No. 82–1433.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1982.

Decided Oct. 14, 1982.

Rehearing Granted Dec. 29, 1982.

Karen Wills, Grand Forks, N. D., for appellant.

Rodney S. Webb, U. S. Atty., Dennis D. Fisher, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

ROSS, Circuit Judge.

On February 12, 1982, a jury found appellant, Wilfred Jackson, guilty of involuntary manslaughter under 18 U.S.C. §§ 1112 and 1153 (1976), and on April 6, 1982, the trial court[1] sentenced Jackson to three years imprisonment. Although appellant raises several issues on appeal,[2] we are primarily concerned with his contention that the trial court erred in failing to suppress statements he made to federal investigators immediately after being given a polygraph examination. For the reasons set forth herein, we reverse.

Jackson's conviction stemmed from the deaths of Sylvia Brown and Victoria Alberts who were run over by an automobile near Jackson's home in rural St. Michael, North Dakota, on July 11, 1981. Jackson spent most of that day drinking with various friends. At one point during the day, Jackson picked up several friends in his automobile, including Sylvia Brown and Victoria Alberts, and drove them to his home where the drinking continued.

In a signed statement given to federal investigators on July 29, 1981, Jackson stated that at some point in the afternoon of July 11, 1981: "I went down to my car and drove up the driveway when I remembered a bump and running over something. I got out of my car and saw that I had run over Sylvia and Victoria." However, according to Jackson's testimony at trial, he didn't remember anything about driving his car or running over the two women. Instead, he maintained that he passed out while drinking with his friends outside his home and regained consciousness some time later when he was in his house. Jackson indicated that while walking near the road in front of his house, he found the bodies of the women lying in the road. According to either version of the incident, Jackson, upon concluding that the women were dead, ran to a neighbor's house to call the police.

After Jackson told a neighbor to call the police, he ran into the woods purportedly to sober up. Bureau of Indian Affairs police officers arrived, and Officer Fred Longie went into the woods to search for Jackson. According to Officer Longie he found Jackson peering over a bush viewing the scene where the two women's bodies were lying. When Jackson tried to leave, Longie pushed Jackson to the ground and handcuffed him. Longie testified that Jackson repeatedly stated, "I did that. I'm sorry."

Jackson was arrested by B.I.A. police officers, given a breathalizer test, and charged with driving a motor vehicle while under the influence of alcohol and driving while his license was suspended. Jackson was held in custody by tribal authorities at the Fort Totten Police Department Jail and pled guilty to both charges in tribal court on July 13, 1981. While Jackson was serving a ninety day sentence at the Fort Totten Jail, FBI Agent Bobby Erwin began an investigation into the incident.[3] On July 14, 1981, Agent Erwin interrogated Jackson after warning Jackson of his constitutional rights. Jackson consented to be interviewed and signed a form waiving those

---

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

2. Appellant contends that the trial court erred in: (1) failing to grant his motion for a mistrial when at trial before a jury the prosecutor referred to results of a polygraph test appellant had been given; (2) failing to suppress statements made by appellant which were obtained by federal investigators in violation of appellant's Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and his rights to prompt presentation before a magistrate, see Fed.R.Crim.P. 5; Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); (3) admitting photographs that were unduly prejudicial. Appellant also challenges the sufficiency of the evidence.

3. Investigations conducted by law enforcement officials into the deaths failed to produce physical evidence linking Jackson's car to the women's death or witnesses to the deaths.

rights.[4] At this interview Jackson maintained that he did not remember the details surrounding the deaths of the two women beyond the fact that he had been drinking at his home with friends, including the two women, on the afternoon of July 11, 1981. Jackson agreed to take a polygraph examination at some time in the future.[5]

On July 29, 1981, Jackson was taken by Agent Erwin to the Devils Lake Law Enforcement Center where he was subjected to a polygraph examination by FBI Agent Edmund Diem. Prior to administering the polygraph, Agent Diem advised Jackson of his *Miranda* rights. Jackson signed a form waiving those rights and indicated that he understood those rights. In addition, Jackson signed a Consent to Interview with Polygraph Form,[6] and indicated that he understood those rights.

After the polygraph was administered, Agent Diem advised appellant that the test indicated that he was being deceptive when he said that he could not remember what happened to the two women, and Diem advised Jackson that it would be to his advantage to be truthful. Agent Diem continued the post-test interrogation without again advising Jackson of his constitutional rights, including the right to remain silent and to have appointed counsel present. At some point during this interrogation Jackson made highly incriminating statements to the effect that it was possible he ran over the two women, that he felt a bump while he was driving his car and that when he got out of the car he saw the women lying on the ground.

Agent Diem then called Agent Erwin back into the polygraph examination room in order to get a signed statement from Jackson. Agent Erwin showed Jackson the advice of rights form he had signed prior to the polygraph examination and told Jackson that those rights still applied. After additional questioning by Agent Erwin, Jackson provided a signed statement essentially repeating the substance of his prior oral admissions. Jackson was arraigned on December 2, 1981, and an indictment charging him with involuntary manslaughter was filed on December 3, 1981.

Jackson moved to suppress the statement given to FBI agents on the grounds that this statement was not voluntarily made because, *inter alia,* he did not know he could have a court appointed lawyer present during questioning. At a suppression hearing held prior to appellant's trial, the district court held that the statement was voluntarily made and that defendant had knowingly and voluntarily waived his constitutional rights. The court based this conclusion on the fact that Jackson had been advised of his constitutional rights to remain silent and to the assistance of counsel, and apparently understood those rights, prior to providing his signed statement. *See United States v. Jackson,* No. C2–81–57, slip op. at 4, 6 (D.N.D. Feb. 11, 1982) (memorandum and order).

On appeal Jackson argues that he did not understand his constitutional rights in general, and, in particular, that he did not understand his right to the assistance of appointed counsel. Consequently, he maintains that he did not knowingly and voluntarily waive those rights and that the inculpatory statements made to FBI agents after the administration of the polygraph examination should have been suppressed because they were not voluntarily made. We believe that the relevant circumstances surrounding the appellant's statements bring this case squarely within the court's recent holdings in *United States v. Eagle Elk,* 682 F.2d 168 (8th Cir. 1982) and *Fields v. Wyrick,* 682 F.2d 154 (8th Cir. 1982).

---

**4.** Appellant, a 44 year old Indian male who has completed eighth grade, testified that he could read and write English.

**5.** It should be noted that Jackson was not charged with a federal crime at this time. It was not until after Jackson had given a signed inculpatory statement on July 29, 1981, that federal charges were filed.

**6.** This form advised appellant that he could refuse to take the test, could stop the test at any time, and could refuse to answer any questions.

*Fields* and *Eagle Elk,* like the instant case, involved incriminating statements made to investigators during post-polygraph test interrogation. These statements were made after investigators had advised the defendants that the polygraph had indicated they were being deceitful but before defendants had been readvised of their *Miranda* rights. In each case defendants had signed a form consenting to the polygraph examination. In addition, the defendants had been fully advised of their *Miranda* rights and had waived those rights on at least two occasions prior to being given the polygraph examination. Nevertheless, this court concluded that these prior warnings and the consents to the polygraph examinations were not sufficiently indicative of a waiver of the right to have counsel present during the post-polygraph interrogation.[7] *See United States v. Eagle Elk, supra,* 682 F.2d at 170; *Fields v. Wyrick, supra,* 682 F.2d at 160–61. The court concluded that in the absence of additional *Miranda* warnings immediately preceding the post-polygraph interrogation the defendants could not be considered to have "knowingly and intelligently waived [their] right to have counsel present at the interrogation described above. [Their] incriminating statements were, therefore, not voluntarily made and should have been suppressed." *United States v. Eagle Elk, supra,* 682 F.2d at 170; *Fields v. Wyrick, supra,* 682 F.2d at 157–58.

The reasoning which led to this court's conclusion in *Fields* and *Eagle Elk* is fully explicated in those opinions and any further discussion would be superfluous.[8] After carefully reviewing the record in the present case, we conclude that the relevant factual circumstances here are indistinguishable from those in *Eagle Elk* and *Fields,* and we hold that Jackson's incriminating statement was not voluntarily made.

Consequently, we reverse appellant's conviction for involuntary manslaughter and remand to the district court for proceedings not inconsistent with this opinion.

---

7. As in the instant case, the defendant in *Fields* repeated his statement to investigators after he had been again advised of his *Miranda* rights. The court concluded that these warnings could not be considered "meaningfully timed," that the waiver came too late and that the repeated confession was merely cumulative. *See Fields v. Wyrick,* 682 F.2d 154, 161 (8th Cir. 1982).

8. The author remains firmly convinced that although the doctrine of *stare decisis* mandates the application of *Fields v. Wyrick, supra,* and the subsequent decision in *United States v. Eagle Elk,* 682 F.2d 168 (8th Cir. 1982), to the present case, *Fields* and *Eagle Elk* were wrongly decided. *See United States v. Eagle Elk, supra,* 682 F.2d at 170 (Ross, J. specially concurring).