UNITED STATES of America, Appellee,

v.

**Wilfred Joseph JACKSON, Appellant.**

**No. 82–1433.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1983.

Decided Aug. 2, 1983.

Rehearing Denied Sept. 28, 1983.

* The Honorable Henry Woods, United States District Judge for the Eastern District of Ar-

kansas, sitting by designation.

Karen Wills, Grand Forks, N.D., for appellant.

Rodney S. Webb, U.S. Atty., Dennis D. Fisher, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This case is before us on rehearing of Wilfred Joseph Jackson's appeal from his conviction for involuntary manslaughter under 18 U.S.C. §§ 1112 and 1153 (1976).[1] In a prior opinion, *United States v. Jackson,* 690 F.2d 147 (8th Cir.1982), this panel reversed the conviction on the authority of *United States v. Eagle Elk,* 682 F.2d 168 (8th Cir.1982) (per curiam), and *Fields v. Wyrick,* 682 F.2d 154 (8th Cir.1982). Shortly thereafter, the Supreme Court reversed *Fields,* holding that this Court erred in establishing a per se rule

> that, notwithstanding a voluntary, knowing, and intelligent waiver of the right to have counsel present at a polygraph examination, and notwithstanding clear evidence that the suspect understood that right and was aware of his power to stop questioning at any time or to speak to an attorney at any time, the police again must advise the suspect of his rights before questioning him at the same interrogation about the results of the polygraph.

*Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982) (per curiam).[2] We then granted the Government's

---

1. Jackson was tried by a jury before the Hon. Paul Benson, Chief Judge of the United States District Court for the District of North Dakota.

2. The Court also vacated *Eagle Elk* and remanded for reconsideration in light of *Fields. U.S. v. Eagle Elk,* —— U.S. ——, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983).

petition for rehearing to reconsider this case in light of the Supreme Court's opinion in *Fields*.[3]

## I.

We shall set forth only a brief outline of the relevant facts here. Jackson, an Indian who lives on the Ft. Totten reservation, was arrested by police officers of the Bureau of Indian Affairs at Ft. Totten on July 11, 1981. The officers discovered the bodies of two women lying in the unpaved road near Jackson's home; they had been run over by a car. When Jackson was apprehended by Officer Longie in the woods nearby, he repeated several times, "I did that. I'm sorry." Jackson, the victims, and other friends had been drinking together that day, and Jackson was intoxicated at the time of his arrest.[4] His car, the only car in the vicinity in working order, was parked by the side of the house. Jackson claimed that he did not know what had happened to the victims. He was charged in the tribal court with DWI and driving with a suspended license. On July 13, 1981, Jackson pleaded guilty to those charges and was sentenced to ninety days in the Ft. Totten jail.

Meanwhile, the Ft. Totten officers had called FBI Special Agent Bobby W. Erwin and told him that Jackson might have run over the victims. On July 14, 1981, Erwin interviewed Jackson at the Ft. Totten jail. After Erwin advised Jackson of his constitutional rights, Jackson said that he and the victims had arrived at his home sometime in the afternoon of July 11 and that he could not remember anything else. Agent Erwin asked Jackson if he would consent to take a polygraph examination, and Jackson agreed.

Some two weeks later, on July 29, 1981, Jackson was taken from the Ft. Totten jail to the Devils Lake Law Enforcement Center, about fifteen miles away, for the polygraph test. FBI Special Agent Edmond Diem, the polygraph examiner, read Jackson his *Miranda* rights and advised him in accordance with a form entitled "Consent to Interview with Polygraph." Then Erwin left the room and Agent Diem administered the examination. After the test was over, Diem told Jackson that his answers indicated deceit and that it would be to his benefit to tell the truth. Jackson then said that he might have run over the women, that he remembered feeling a bump while driving his car, and that when he got out of the car he found the victims lying on the ground. Agent Diem called Agent Erwin back into the room, and Agent Erwin, after again advising Jackson of his rights, prepared a statement for Jackson to sign. This statement was admitted into evidence at Jackson's trial for manslaughter.

## II.

Jackson contends that his confession was taken in violation of his right under *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and Rule 5(a) of the Federal Rules of Criminal Procedure to be taken before a magistrate without unnecessary delay, and should have been suppressed for that reason. As we said in *United States v. Standing Soldier,* 538 F.2d 196 (8th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976),

> For purposes of evaluating a claim of impermissible delay of presentment before a magistrate, we look to the point of time at which the government had probable cause to arrest a defendant then in custody in order to measure the length of the delay. *See United States v. Keeble,* 459 F.2d 757, 759 (8th Cir.1972), *rev'd on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

---

3. Jackson argues that, because of certain factual distinctions between his case and *Fields, Fields* is not controlling here. We have considered each of the proffered distinctions and hold that they are not legally significant. We therefore now reject Jackson's *Miranda* argument.

4. According to a breathalyzer test administered shortly after Jackson was arrested, his blood alcohol content was 0.21%.

538 F.2d at 201. The Government argues that Jackson was not in federal custody at the time he made his incriminating statement, that he was in jail only for tribal offenses. It asserts that the *Mallory* and Rule 5 requirements came into play only when the FBI agents had probable cause to arrest Jackson for manslaughter, and that they did not have probable cause until Jackson confessed. The District Court accepted this argument, but we think this was error. The Ft. Totten police officers who arrested Jackson were connected with the Bureau of Indian Affairs (Trial Tr. 10). They were not just tribal police. These officers had probable cause to arrest Jackson for causing the victims' deaths. Not only were they aware of Jackson's incriminating statement, when he was apprehended, that "I did that. I'm sorry," the physical evidence indicated Jackson's guilt. The women were found lying in the road near Jackson's home, they had been run over by a car, Jackson's car was the only car on the scene in working order, Jackson was drunk and had been driving that day, and there was no indication that anyone else had been driving in the vicinity.[5]

Thus, Jackson was in federal custody from the time he was arrested, not merely from the time when the FBI agents independently developed probable cause, and it does not matter that the BIA police did not formally charge Jackson with manslaughter. *United States v. Bear Killer,* 534 F.2d 1253, 1257 n. 3 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Keeble,* 459 F.2d 757, 760 (8th Cir.1972), *rev'd on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). *Cf. United States v. DeMarce,* 513 F.2d 755, 757 (8th Cir.1975) (arrest by BIA law enforcement officers is

"federal arrest" for purposes of 18 U.S.C. § 5035 (now § 5033)); *United States v. Leeds,* 505 F.2d 161, 163 (10th Cir.1974) (where police officer, who was not employed by the BIA, but solely by the tribe, arrested the defendant for a tribal offense, Rule 5(a) did not apply unless there was a "working arrangement" between tribal police and BIA officers).[6] Since the Government does not assert that there was any other reason not to take Jackson before a magistrate, his statement was taken in violation of his rights under *Mallory* and Rule 5(a).

The fact that a statement is obtained in violation of *Mallory* does not, however, render it inadmissible per se. Since 1970, when 18 U.S.C. § 3501 was enacted, delay in being taken before a magistrate has been only one factor to consider in determining whether a confession is involuntary, and the statute provides that a confession is admissible "if it is voluntarily given." 18 U.S.C. § 3501(a) (1976). The trial judge is to determine voluntariness, taking into consideration all the surrounding circumstances,

> including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or

---

**5.** Even if the arresting officers were just tribal police, we believe that the FBI agents had probable cause to arrest Jackson for manslaughter on July 14. Although they apparently did not learn of Jackson's incriminating statement to Officer Longie until shortly before trial, the other evidence alone established probable cause.

**6.** *United States v. Standing Soldier, supra,* does not prescribe a different rule. Although we

said there that "[w]e doubt that the *FBI agents* had probable cause to arrest the appellant on March 26th," 538 F.2d at 196 (emphasis added), we do not believe that this observation was meant to imply that the FBI agents had to develop probable cause independently. In *Standing Soldier,* it appears that the defendant did not make an incriminating statement to either the BIA police or to the FBI agents until April 2.

not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b) (1976).

Here the District Court found that Jackson's confession was voluntary. Although the judge did not consider the time lapse, we are confident beyond a reasonable doubt that this factor would not have changed his determination.

Jackson does not claim that he was physically coerced. Rather, he claims that he was psychologically coerced, that his statement was involuntary because he did not know that he would be furnished a lawyer if he could not afford one and that he had the right to have that lawyer present during the polygraph examination and subsequent interrogation. The District Court explicitly found that Jackson did know of his right to appointed counsel. He was advised of his right to counsel before he was first asked to take the exam, again immediately before he took it, and again before the final interrogation. On each occasion, Jackson was given a printed form reciting his rights and was given the opportunity to read it. Jackson has an eighth-grade education and can read. On each occasion, he said that he had no questions and signed the form. At the suppression hearing, he admitted that he had read the forms and understood them. Moreover, even though Jackson said at the suppression hearing that he had never been represented by a lawyer in federal or tribal court, the District Court took judicial notice that Jackson had been represented by appointed counsel when he was tried in federal court for robbery some years earlier. The District Court properly found that Jackson was cognizant of his constitutional rights and voluntarily and knowingly waived them. Ordinarily we would remand for a new finding on the issue of voluntariness, so that the trier of fact could reconsider it in the light of our holding that there was an unreasonable delay in arraignment. But here there is no good reason for such a procedure. On this record, there is no appreciable chance that the single factor of

delay in arraignment would produce a finding that the confession was involuntary.

### III.

Jackson makes several other arguments, all of which are without merit. There was ample evidence to support the jury's verdict. The District Court did not abuse its discretion by admitting two photographs of the victims; the photographs were small and not unnecessarily gory. Finally, although the prosecutor impermissibly brought out on cross-examination of Jackson that Agent Diem had told Jackson that he had failed the polygraph examination, the District Court promptly gave a cautionary instruction. Jackson's lawyer had brought up, on direct examination, the fact that Jackson had taken the test, consented to the giving of the cautionary instruction, and did not move for a mistrial until after she had concluded re-direct examination. We find no reversible error. Accordingly, Jackson's conviction is

Affirmed.

McMILLIAN, Circuit Judge, concurs in the result.